IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                            Case No. 4:12-cr-40005-001

CHRYSTAL LYNN LARCADE                                               DEFENDANT

**ORDER**

Before the Court is Defendant Chrystal Lynn Larcade's Motion to Reduce Sentence Pursuant to Section 603 of the First Step Act. ECF No. 119. The Government has responded. ECF No. 122. The Court finds the matter ripe for consideration.

**BACKGROUND**

On January 25, 2012, Defendant was charged with Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(a)(1) and with aiding and abetting in Kidnapping resulting in Death in violation of 18 U.S.C. § 1201(a)(1) and § 2. ECF No. 1. On November 8, 2013, Defendant plead guilty to the charge of Conspiracy to Commit Kidnapping. ECF No. 63. Defendant was sentenced to 360 months imprisonment, five years of supervised release, and a $100.00 special assessment. ECF No. 87.

Defendant filed a Motion for Compassionate Release on July 28, 2020. ECF No. 113. The Court appointed the Federal Public Defender to represent Defendant with any motions for compassionate release pursuant to Section 603 of the First Step Act of 2018 ("FSA"). ECF No. 114. Defendant subsequently filed the instant motion on December 2, 2020. ECF No. 119. Defendant argues that the combination of her health issues, the ongoing Covid-19 pandemic, and

her confinement create circumstances justifying her release. Specifically, Defendant contends that her obesity puts her at increased risk of severe illness if she contracts Covid-19 and that her disability makes it difficult to care for herself.[1] Defendant also argues that the required statutory considerations for sentencing favor her release because of her time already served, the pandemic creating a harsher sentence than initially anticipated, and the steps she has taken toward rehabilitation during her confinement. Lastly, Defendant argues she would present no danger to the public if released because of her proposed living situation and her physical disabilities.

The Government has responded in opposition to Defendant's motion. ECF No. 122. First, the Government details the extensive measures the Bureau of Prisons ("BOP") has taken to slow the spread of Covid-19 within its facilities.[2] The Government then notes that other courts have found that the ongoing pandemic on its own is not a sufficient justification for reducing an inmate's sentence. Next the Government argues that the necessary policy and statutory considerations weigh heavily against Defendant's request for release. For the "extraordinary and compelling" circumstances consideration, the Government notes that Defendant has already contracted and recovered from Covid-19 while in the care of the BOP. Regarding the sentencing factors, the Government argues that the deterrence impact of Defendant's sentence would be greatly diminished if she only had to serve one-third or less of her sentence. Also, the Government argues that the violent attempted kidnapping that gave rise to Defendant's conviction significantly undermines her case for release under the statutory sentencing and public safety factors.

---

[1] Defendant is diagnosed with Reflex Sympathetic Dystrophy Syndrome ("RSDS"), which Defendant describes as "a rare disorder of the sympathetic nervous system that is characterized by chronic, severe pain. The sympathetic nervous system is that part of the autonomic nervous system that regulates involuntary functions of the body such as increasing heart rate, constricting blood vessels, and increasing blood pressure. Excessive or abnormal responses of portions of the sympathetic nervous system are thought to be responsible for the pain associated with reflex sympathetic dystrophy syndrome." ECF No. 119, p. 5.
[2] These measures include, but are not limited to, increased screening of inmates and staff, suspension of social visits, operational modification to emphasize social distancing, and establishing quarantine areas. ECF No. 122, p. 4-9.

## DISCUSSION

Relief is available under the FSA if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Before an analysis of those factors can begin, the Court must determine if Defendant has exhausted all administrative remedies available. 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The FSA provides two avenues for a defendant to bring a compassionate release motion to a district court. The defendant may either file a motion once he "has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring the motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Defendant bears the burden of showing that she exhausted her administrative rights with the BOP before filing a compassionate-release motion. *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019).

The BOP has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility in which the defendant is housed in. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the

applicable judicial district to file a compassionate-release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b-c).

In this case, Defendant sent her request for compassionate release in writing to the warden on May 14, 2020. ECF No. 119-1, p. 3. The warden issued an initial denial of that request on May 26, 2020. *Id* at p. 7. Defendant's subsequent appeal to the regional director was denied on July 29, 2020. *Id.* at p. 9-10. Defendant appealed the regional director's denial on August 28, 2020, and has yet to receive a response. *Id.* at p. 11. The Government affirms that Defendant has exhausted her administrative remedies and that this Court has jurisdiction to hear Defendant's request for release. ECF No. 122, p. 3. Accordingly, the Court finds that Defendant has exhausted her administrative remedies under 18 U.S.C. § 3582(c)(1)(A) and can assess her motion on the merits.

### B. Extraordinary and Compelling Reasons

The Court finds that Defendant has failed to show that there are extraordinary and compelling reasons justifying a reduction in her sentence and a release from confinement.

Pursuant to the FSA, the Court can grant Defendant's request for a sentence reduction "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing

Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress has not defined what constitutes "extraordinary and compelling" reasons, although it did note that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See id.*

The relevant policy statement contemplates a reduction in the term of imprisonment if "extraordinary and compelling reasons warrant the reduction." USSG § 1B1.13(1)(A).[3] This policy statement limits "extraordinary and compelling reasons" to only include the following four circumstances:

(A) Medical Condition of the Defendant. –

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is –
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to

---

[3] This policy statement predates the FSA and the Sentencing Commission has not since updated it or adopted a new policy statement. This creates an issue because parts of the pre-FSA policy statement do not square neatly with the language of the FSA. *See* U.S.S.G. § 1B1.13 (authorizing compassionate release only on the BOP's motion). Thus, it is unclear whether extraordinary and compelling reasons may be found only from the specific examples listed in the pre-FSA policy statement or if courts can look beyond those examples. Courts have answered that question with mixed results. *See United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (highlighting the debate regarding the outdated policy statement). However, at minimum, the pre-FSA policy statement provides guidance as to what constitutes extraordinary and compelling reasons. *See U.S. v. Schmitt*, 2020 WL 96904, at *3 (stating that various courts agree that even though the policy statement has not been updated, it nevertheless provides helpful guidance).

> provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances. –

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Defendant argues that her health issues, particularly her obesity, combined with the ongoing Covid-19 pandemic create "extraordinary and compelling" circumstances justifying her release under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I) and (D). ECF No. 119, p. 9-10. The Court is not persuaded. While her health issues are significant, they are not serious enough to warrant release on their own under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). Defendant is currently serving her sentence at Carswell Federal Medical Center where she can get the care necessary for her health issues while serving her sentence. ECF No. 119, p. 2. As to the ongoing pandemic, it must be noted that Defendant has already contracted and recovered from Covid-19 while under the care of the BOP. ECF No. 119, p. 23, 103. This significantly undermines her argument that continued incarceration places her at a high enough risk for serious health issues during the pandemic that release is warranted. She will continue to receive the medical care from the BOP that has assisted with her health problems and has overseen her bout with, and recovery from, Covid-19. This is in addition to the various measures the BOP has taken to lessen the chances of Covid-19 spreading within its facilities and to lessen Defendant's chance of reinfection. In light of this, the Court finds

that Defendant has not presented "extraordinary and compelling" circumstances that satisfy the requirements for release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

### C. § 3553(a) Sentencing Factors

Even if the Court found Defendant had presented an extraordinary and compelling reason for compassionate release, it would still deny such release upon its evaluation of the factors under 18 U.S.C. § 3553(a). That statute provides:

> (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed—
>>
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B) to afford adequate deterrence to criminal conduct;
>>>
>>> (C) to protect the public from further crimes of the defendant; and
>>>
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> (3) the kinds of sentences available;
>>
>> (4) the kinds of sentence and the sentencing range established for—
>>
>>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];
>>
>> (5) any pertinent policy statement [issued by the Sentencing Commission];
>>
>> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>>
>> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant argues that the pandemic creating a harsher sentence than initially anticipated, her time already served, and her efforts toward rehabilitation support her release pursuant to the § 3553(a) sentencing factors.  The Court is not persuaded. Regarding the pandemic creating a harsher sentence, the Court determined above that the circumstances related to Defendant's medical issues and potential reinfection with Covid-19 are not as severe as Defendant contends.  As to the time Defendant has already served, it is less than one-third of her total sentence.  This significantly undermines Defendant's argument that her sentence has achieved its deterrence purpose under § 3553(a)(2)(B).  Defendant participated in a violent attempted kidnapping that resulted in the death of the victim.  ECF No. 64, p. 2-4.  Releasing Defendant after such a small percentage of her sentence has elapsed would undermine both § 3553(a)(1)'s requirement that a sentence consider the nature and circumstances of the offense and § 3553(a)(2)(A)'s requirement that the sentence reflect the seriousness of the offense.  The Court notes Defendant's efforts at education and rehabilitation during her incarceration. However, those efforts do not outweigh the concerns that arise from analyzing her motion pursuant to § 3553(a)'s considerations. Accordingly, the Court finds that an evaluation of the § 3553(a) sentencing factors does not support Defendant's request for release.

**D. Safety Considerations Under 18 U.S.C. § 3142(g)**

The Court also finds that the necessary consideration of public safety prevents the Court from grating Defendant's request for release.

The requirement under 18 U.S.C. § 3582(c)(1)(A) that any reduction be consistent with any applicable policy statements issued by the Sentencing Commission necessitates an evaluation of the 18 U.S.C. § 3142(g) safety factors.  *See* USSG § 1B1.13(2).  The factors for consideration under § 3142(g) are:

>   (g) Factors to be considered.-The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
>>   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>>
>>   (2) the weight of the evidence against the person;
>>
>>   (3) the history and characteristics of the person, including—
>>
>>>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>>
>>>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>>
>>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Defendant argues that her release would not risk a danger to the public due to her physical ailments and having a stable place to reside with her parents if released. The Court is not persuaded. As noted above, Defendant's offense is serious and the circumstances surrounding it involve violence and the death of the victim. Just as this undermined Defendant's motion under § 3553(a)(1), it weighs heavily against her regarding § 3142(g)'s required consideration of the circumstances of her offense and whether it was violent in nature. The Court understands

Defendant's view regarding her physical condition and potential living arrangement if released released.  However, the statutory safety considerations prevail at this point in time in light of Defendant serving less than one-third of her sentence and not accruing enough of the potential rehabilitative effects of that sentence.  Accordingly, the Court finds that it must deny Defendant's request for release pursuant to the § 3142(g) safety considerations.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant's motion (ECF No. 119) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 26th day of February, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge